IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TONY NELSON,

    Plaintiff,

    v.                                                                           Civ. No. 10-553 BB/DJS

CITY OF ALBUQUERQUE, et al.,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on motions for summary judgment filed by all parties (Docs. 66, 72, 73). Having reviewed the submissions of the parties and the relevant law, the Court will grant Defendant City's motion for summary judgment on the claim of a city custom or policy of allowing excessive force, and deny all other motions for summary judgment.

### Factual and Procedural History

On March 3, 2009, Plaintiff Nelson and his friend Jeffrey Patterson were drinking beer at Mr. Patterson's house in Albuquerque when they got into an argument (Doc. 73-3[1]). Mr. Patterson called 911, asking to have Plaintiff removed from his house (*Id.*). He stated that Plaintiff Nelson had threatened him with a 16-inch military knife to his throat, and a potentially lethal deer rifle (*Id.*). A warrant was issued for Plaintiff Nelson's arrest for aggravated assault (Doc. 66-4).

---

[1] Federal Rule of Evidence 803(c)(6), Records of regularly conducted activity, permits a police report to be admitted into evidence, if the report is trustworthy and does not violate the other rules of evidence. Fed. R. Evid. 803 advisory comittee's note; *See, e.g. United States v. Pazsint,* 703 F.2d 420 (9th Cir. 1983).

Albuquerque police and SWAT were dispatched to Mr. Patterson's house, where Mr. Patterson was waiting outside (Doc. 73-4).  Mr. Patterson told officers that Plaintiff was inside the house with the weapons, and that Plaintiff was a mentally ill Vietnam veteran (*Id.*).  Mr. Patterson was safely escorted away (*Id.*).

The officers instructed Plaintiff, via loudspeaker, to leave the house with his hands raised (Doc. 73-2).  Plaintiff exited the house, but did not comply with police commands (Doc. 99-1). Officers then applied successive forms of force.  To effect Plaintiff's arrest, the officers used bean bag rounds, a noise flash diversionary device, wooden baton rounds, a police service dog, and numerous Taser cycles. (Doc. 66 at 4-5).

Plaintiff alleges several of the individual officers ("Officers") committed common law battery under the New Mexico Tort Claims Act,[2] and used excessive force under 42 U.S.C. § 1983.  Plaintiff and Officers each move for summary judgment on these claims.  Plaintiff further alleges the City of Albuquerque ("City") permitted unconstitutional customs or policies allowing excessive force by its police officers, and of failing to train its officers to handle mentally ill subjects.  Defendant City moves for summary judgment on these claims.

### Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting

---

[2] The New Mexico Tort Claims Act waives sovereign immunity for, *inter alia*, law enforcement officers sued in battery.  NMSA § 41-4-12 (1978).

2

Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986).  To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).  When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

## Discussion

### I.  OFFICER CONDUCT

Plaintiff brings suit against the individual officers, claiming their conduct in effecting his arrest constitutes battery under New Mexico Tort Claims Act,  and excessive force under 42 U.S.C. § 1983.  Both parties move for summary judgment.  For the reasons below, both motions are denied.

### A.  Plaintiff's Motion for Summary Judgment

For both excessive force and battery, liability is determined by the objective reasonableness of the officers' conduct.  The Fourth Amendment of the Constitution prohibits officers from using excessive force when seizing an individual, limiting officers to an "objectively reasonable" amount of force. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005).  Similarly, under New Mexico common law, police officers are privileged to use the force necessary to effect an arrest,

but may be liable for tortious battery if they use more force than reasonable. *See Lundstrom v. Romero*, 616 F.3d 1108, 1129 (10th Cir. 2010); *Reynaga v. County of Bernalillo*, 1995 WL 503973, at *2 (unpublished, 10th Cir. Aug. 25, 1995).

The 'objectively reasonable' standard does not lend itself to "mechanical application," but instead hinges on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In *Graham v. Connor,* the Supreme Court highlighted three factors to determine whether officer force is objectively reasonable: (1) the severity of the suspect's crime; (2) whether the suspect posed an immediate threat to safety of the officers and others; and (3) whether the suspect was actively resisting arrest. 490 U.S. at 396. Tenth Circuit courts apply these factors "acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez*, 399 F.3d at 1220.

In this case, the officers effected Plaintiff's arrest by successively deploying five beanbag rounds from a shotgun, which each struck Plaintiff; a noise flash diversionary device; a 37mm. wooden baton round, which fired four dowels that each struck plaintiff; a police service dog, Doc, who bit and clung to Plaintiff's left arm; one Taser cycle, which may have been obstructed by Plaintiff's leather jacket; and six, five-second cycles of another Taser, which struck Plaintiff's neck and chest (Docs. 96-3; 73-6).

Applying the first *Graham* factor, the officers used this force while arresting Plaintiff for aggravated assault, a fourth-degree felony. (Doc. 66-4); 30-3-2 NMSA 1978. Plaintiff reportedly used a knife and a gun in his assault (Doc. 73-4). The danger and severity of Plaintiff's crime favors the use of force.

The second factor, whether Plaintiff posed an immediate threat to others, is disputed. Plaintiff contends he posed no immediate threat because he was unarmed, noncombative, and

surrounded by police officers (Doc. 73 at 21). The Officers contend that Plaintiff posed a threat because prior to their use of force, Plaintiff was known to have recently had a knife and a gun, because several officers believed Plaintiff was turning towards the house where he had left the knife and gun, and because Officers could not determine if Plaintiff had weapons due to Plaintiffs' heavy jacket (Doc. 66 at 11). Defendants also assert that before Plaintiff fully exited the house, several officers believed Plaintiff had been beckoning officers toward him while hiding a knife in his left hand (Doc. 78 at 21). There remains genuine dispute as to the level of threat, if any, posed by Plaintiff.

Under the third factor, force is more likely reasonable when a suspect flees or resists arrest, *Graham,* 490 U.S. at 396, but not when the officers' "own reckless or deliberate conduct during the seizure unreasonably created the need to use such force," *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995). In this case, Plaintiff was "non-compliant" with police orders, both before and after force was first applied (Doc. 78-5 at 2). Plaintiff claims this latter non-compliance was caused by police conduct. Plaintiff claims that once force was applied, he was immobilized by pain and confusion, such that he could not volitionally comply with police orders (Doc. 76 at 18-20). Thus, according to Plaintiff, the continued escalation of force was excessive (*Id.*). Plaintiff, however, does not remember any of the above events and only inferences support his factual assertions (Doc. 66-9 at 2). For Plaintiff's summary judgment motion, inferences must be drawn in the light most favorable to the Officers. *Matsushita*, 475 U.S. at 587. "The very essence of [a jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 703 F.2d 1152, 1158 (10th Cir. 1981); *Murray v. Crawford*, 689 F. Supp. 2d 1289, 1295 (D. Colo. 2010).

In two of the three *Graham* factors, material facts necessary to determine the reasonableness of the officers' conduct remain at issue. Therefore, summary judgment is not appropriate for Plaintiff on his claims of excessive force and battery.

B. Defendant's Motion for Summary Judgment - Qualified Immunity

Defendants move for summary judgment, asserting qualified immunity. In § 1983 cases, qualified immunity provides an affirmative defense to government officials "for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1978)). A motion for summary judgment that asserts qualified immunity is reviewed differently from other summary judgment motions. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Such a motion will be denied if a plaintiff shows that first, his rights were violated, taking the facts in the light most favorable to him; and second, the rights were "clearly established" by the time of the violation. *Id*.[3]

First, regarding whether Plaintiff's rights were violated, this issue remains in genuine dispute. *See supra* Part I.A. Likewise, taking the facts in the light most favorable to the Plaintiff, a reasonable factfinder could find that Plaintiff's right to be free of excessive force was violated. Second, the right to be free of excessive force, and the objectively reasonable standard under which that right is analyzed, are both "clearly established" for the purposes of qualified immunity. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313-14 (10th Cir. 2002) (quoting *Wilson*

---

[3] In *Pearson v. Callahan*, the Supreme Court overruled *Saucier* in part, holding that these two factors may be analyzed in either order. 555 U.S. 223, 225 (2009).

*v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995)).  Therefore, the Officers are not entitled to qualified immunity, and summary judgment is not appropriate.

II.  CITY CUSTOMS OR POLICIES

Plaintiff claims the City practices two unconstitutional customs:  permitting widespread excessive force by its police officers, and failing to train its officers to handle mentally ill subjects.  Defendant City moves for summary judgment on both of these claims.  For the reasons below, summary judgment will be granted for the permissive excessive force claim, but not the failure to train claim.

Section 1983 holds a municipality liable for constitutional violations by its officers only "where the municipality itself causes the constitutional violation." *Monell v. New York City Dep't of Social Serv's*, 436 U.S. 658, 694 (1978).  A municipality is said to cause the constitutional violation when it enacts an unconstitutional policy, whether through formal regulations or informal "custom or usage." 42 U.S.C. § 1983;  *Monell*, 436 U.S. at 690-691, 694**.**

A.  Permitting Excessive Force

To establish that the excessive force herein alleged is part of a city-wide custom or policy, Plaintiff must show that this type of violation is so "widespread" as to "constitute a custom," or show it was enacted pursuant to an "existing, unconstitutional municipal policy."  *Moss v. Kopp*, 559 F.3d 1155, 1167 (10th Cir. 2009) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Oklahoma City*, 471 U.S. at 823-824.  Such an unconstitutional custom or policy cannot be inferred solely from a single, unconstitutional act. *Id.*

Here, Plaintiff alleges a single unconstitutional act of excessive force, and nothing more. He provides no proof of an existing policy, nor alleges other such violations.  Plaintiff infers the unconstitutional custom only from the "obviousness of the facts" of the case at hand (Doc.1 at 8). Because a single unconstitutional incident, without more, cannot impose municipal liability, there is no genuine issue on this point.  Therefore, summary judgment will be granted for the City.

B.  Failing to Train

Plaintiff claims the excessive force herein alleged was caused by the City's failure to adequately train its officers.  To establish this as part of an unconstitutional policy of inadequate training, a plaintiff must show that the officers were inadequately trained, and that the training failure amounts to the City's deliberate indifference toward the constitutional rights of its citizens.  *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378 at 389-90).  To establish deliberate indifference, a plaintiff must show: (1) a constitutional deprivation, (2) that the circumstances under which the violation occurred was a usual and recurring situation with which police officers must deal, (3) a direct causal connection between the failure to train and the constitutional deprivation, and (4) that the failure to train demonstrates a deliberate indifference on the part of the municipality. *Brown v. Gray,* 227 F.3d 1278, 1286 (10th Cir. Colo. 2000;*, Zuchel v. City and County of Denver, Colo.*, 997 F.2d 730, 734-735 (10th Cir. 1993); *Canton* 489 U.S. at 388-91, *Allen v. Muskogee;* 119 F.3d 837, 841 (10th Cir. 1997).

As a threshold matter, a plaintiff must first prove the training was truly inadequate. Plaintiff provides some evidence that Officers did not treat Plaintiff according to police

procedure for handling suspected mentally ill subjects[4] (Doc. 99-5 at 4, 6). Procedure requires officers to "calm the situation," "assume a quiet, non-threatening manner when approaching the subject," and "not threaten the subject with arrest or physical harm" (Doc. 99-8 at 1-2). Officers instead relied on an imposing presence and swift physical force to arrest Plaintiff. At least the four officers named as Defendants acted counter to this procedure, including the commanding Sergeant who ordered the use of force (Doc. 99-1). The record also shows some evidence that Officers were unaware of the procedure for handling mentally ill subjects (Doc. 99-5 at 6). While the record is rife with evidence of Officers' general training, it lacks evidence of training on this specific procedure, or the efficacy of such training. This raises the inference that City training on this topic is inadequate.

Moving to the first of the four deliberate indifference requirements, a genuine dispute remains as to whether the officers deprived Plaintiff of his constitutional right to be free of excessive force. *See supra* Part I.A. Second, Plaintiff has provided some statistics suggesting that New Mexico police officers regularly face mentally ill, emotionally unstable, or drunk subjects (Doc. 99-6); *See also Allen,* 119 at 842-4 (finding that police regularly must respond to armed mentally ill or emotionally upset persons, and that inadequate training in this area can give rise to municipal liability). While Plaintiff provides only limited supporting evidence, Defendant does not substance of that evidence.

Third, there is a dearth of evidence from either party as to whether the lack of training directly caused the excessive force. Plaintiff asserts that Officers acted under information that

---

[4] Plantiff submits Albuquerque Police Department Procedural Order 2-13-8: HANDLING THE MENTALLY ILL/SUSPECTED MENTALLY ILL. While no foundation has been laid that this procedure truly dictates proper police conduct in a case such as this, City has not submitted a different, more applicable procedure. Thus, for the purposes of summary judgment, the Court will presume that Procedural Order 2-13-8 applies.

Plaintiff was mentally ill and intoxicated, but did not respond using the procedure for mentally ill subjects (Doc. 99 at 10). Plaintiff leaves it for the court to infer causation from this alone.

The City infers a lack of causation, based on the presumption that Plaintiff was not in fact a mentally ill subject. Because Plaintiff is mentally competent for this trial, City infers that Plaintiff was mentally healthy for the purposes of police procedure at the time of the alleged injury (Doc. 101 at 5). They also cite Plaintiff's lack of a history of psychiatric treatment (*Id.*). Whether Plaintiff was actually mentally ill at the time of the incident cannot be determined from the record. Whether Plaintiff was otherwise entitled to different treatment, and whether this ultimately caused a constitutional violation, also cannot be determined from the record.

Fourth, there is an issue as to whether the alleged failure to train amounts to deliberate indifference on the part of the city. In a failure to train claim, "a pattern of constitutional violations is not necessary" to establish deliberate indifference. *Allen v. Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997). Even when no violations have previously occurred, the need for officer training in an area may be "so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (U.S. 1989), *Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010). Given the frequency of mentally ill, upset, and intoxicated suspects, and potentially devastating results, failure to train on this topic could be considered deliberate indifference.

Taking all the factors together under the light most favorable to Plaintiff, genuine issues remain disputed. The failure to train claim, while thin, is not proper for summary judgment.

**Conclusion**

Summary judgment is granted for Defendant City on the claim of a custom of allowing excessive force. On the claim of Officer excessive force, summary judgment is denied to both parties. On the claim of Officer battery, summary judgment is denied to both parties. On the claim of City's failure to train, summary judgment is denied to the City.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE