IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TONY NELSON,

      Plaintiff,

vs.                                                    No. CV 10-553 BB/DJS

CITY OF ALBUQUERQUE, a political subdivision
of the STATE OF NEW MEXICO, et al.,

      Defendants.

## PLAINTIFFS' RENEWED MOTION FOR A JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b) AND, ALTERNATIVELY, MOTION FOR NEW TRIAL PURSUANT TO RULE 59(a)

Plaintiff Tony Nelson, through counsel, HAWK LAW, P.A. (Sharon Hawk) and Gonzalez & Pizzonia, LLC (Justin P. Pizzonia and Johanna A. Pickel), hereby renews his motion for a judgment as a matter of law pursuant to Federal Rule 50(b) and, alternatively, moves for a new trial pursuant to Federal Rule 59(a). In support thereof, Plaintiff states:

### I. PROCEDURAL BACKGROUND

In his original complaint, Plaintiff named Defendants Johnston, Limon, Hughes, Weimerskirch and the City of Albuquerque. Plaintiff's claims included a § 1983 Excessive Use of Force claim and state law tort battery claim against the individually named defendants, as well as a municipal liability §1983 claim and a vicarious liability claim as to the state law tort battery claim against the City defendant. At the close of evidence and before the matter was submitted to the jury, Plaintiff moved for a judgment as a matter of law as to all defendants pursuant to Federal Rule 50(a). The Court denied Plaintiff's motion and the matter was submitted to the Jury. On October 31, 2011, the Jury found for the individually named defendants and against

Plaintiff as to the § 1983 Excessive Use of Force claim and state law tort battery claim and, consequently, never reached the issues as to Defendant City. On November 8, 2011, the Court entered its judgment as to the Jury's verdict. *Doc. 157*. Plaintiff now renews his motion for a judgment as a matter of law.

## II. LAW REGARDING RULES 50 AND 59

Federal Rule 50(a) provides that if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. *Fed. R. Civ. Pro. 50(a)(1)(B)*. Federal Rule 50(b) provides that, within 28 days of the entry of judgment, a party may renew a motion for judgment as a matter of law after trial and, in doing so, alternatively seek a new trial under Rule 59. *Fed. R. Civ. Pro. 59(b)*. Rule 59 provides that the Court may, on motion within 28 days of the entry of judgment, grant a new trial on all or some of the issues for any reason for which a new trial has been granted in an action. *Fed. R. Civ. Pro. 59(a)(1)(A)*.

## III. RENEWED MOTION

Claims of excessive force by police officers in violation of the Fourth Amendment are analyzed using an objective reasonableness standard from the perspective of a reasonable police officer on the scene. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Gonzales*, 222 F. Supp. 2d at 1279 (*relying on Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001). This standard calls upon the Court to analyze the factual circumstances of every case, including 1) the severity of the crime, 2) whether the subject poses an immediate threat to the safety of officers and others and 3) whether the subject is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 393; *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir.

Colo. 2007); *Gonzales*, 222 F. Supp. 2d at 1279. Whether Defendants acted reasonably in this case is a legal determination in the absence of disputed material facts. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001). Although the reasonableness standard is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts. Direct participation is not necessary for a defendant to be liable under 42 USC § 1983. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-1280 (10th Cir. 2008). Any official who causes a citizen to be deprived of her constitutional rights can also be held liable. *Id*. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights. *Id*. Moreover, Defendants are responsible not only for the force they used against Plaintiff, but also for failing to take steps to mitigate the fracas that ensued. *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007). Lastly, a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under 1983. *Mick by and Through Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

**A.     The Use Of Five Beanbag Rounds Was Excessive**

Trial testimony shows that, at the time Defendant Hughes deployed his beanbag shotgun, Plaintiff did not pose an immediate threat to officers or others. A safe perimeter had been set up to ensure that the safety of the public and responding officers. *See Exhibit 1, Plaintiff's Exhibits 8, 10, 11, 12, 13; Exhibit 2, Plaintiff's Exhibits 44, 45, 45A, 46, 49.* There was only one door by which Plaintiff could exit the house, all sides of the house had lethal police coverage, and any egress from the property was further hampered, if not blocked, by two razor wired fences, a chain linked fence, the SWAT Entry team and high-ground snipers. *See Exhibit 1, Plaintiff's Exhibits 8, 10, 11, 12, 13; Exhibit 2, Plaintiff's Exhibits 44, 45, 45A, 46, 49.* Moreover, there is no evidence that Plaintiff posed an immediate threat to Entry once he exited the house.

Defendant Johnston and Limon testified that Plaintiff followed commands to walk towards the entry team. As the evidence showed, he slowly walked towards entry empty-handed. There is no evidence that Plaintiff was combative. Up to and at the time that Defendant Hughes deployed his beanbag shotgun, Plaintiff was complying with orders to surrender. Defendant Limon testified that he was the one to give Plaintiff orders to walk towards entry and when to stop. Defendant Limon testified that he would have ordered Plaintiff to stop approximately 25 feet from the entry team and to turn around at that point. The testimony through use of photograph exhibits, as well as Defendants' own diagram exhibit, showed that Plaintiff indeed stopped as ordered approximately 25 feet from entry. *See Exhibit 2, Plaintiff's Exhibits 45, 45A, 46. See also, Doc. 134, Defendant's Exhibit AA, Scene Diagram.* Defendants Hughes and Johnston both testified, and there is no evidence to the contrary, that when Plaintiff started to turn around, Defendant Johnston ordered Defendant Hughes to deploy his shotgun. They further testified that Defendant Hughes complied by emptying his shotgun of its five rounds into Plaintiff. Defendants Johnston and Hughes testified that the reason that they deployed the beanbag shotgun was because they inferred from Plaintiff's actions that he started to turn around to go back to the house. However, the evidence fails to support a finding that a reasonable officer, under these circumstances, could infer that Plaintiff was turning around to retreat to the house rather than turning around in compliance with orders to turn around. The testimony, as supported by the diagram and photographic evidence shows that Defendant Hughes was facing Plaintiff at the time of the shots. *See Exhibit 2, Plaintiff's Exhibits 45, 45A, 46. See also, Doc. 134, Defendant's Exhibit AA, Scene Diagram.* While Defendants Hughes, Limon and Johnston testified and/or demonstrated that Plaintiff turned to his left in a quick manner, the photographic evidence shows that shots one and two struck Plaintiff midline – once in the sternal area and once in the epigastrium while shots three through five coursed along his right rib cage to his back as Plaintiff obviously turned away

from the shots. *See Exhibit 3, Plaintiff's Exhibits 1,6.* Moreover, the evidence in the form of exhibits and testimony shows that, at the time Plaintiff was turning around, he was intoxicated, had exhibited a willingness to surrender himself by first dropping the knife and coming out of the house empty handed as ordered, walking down the drive as ordered, stopping 25 five feet in front of entry as ordered and then turning as ordered. *See, e.g., Exhibit 2, Plaintiff's Exhibits 45, 45A, 46. See also, Doc. 134, Defendant's Exhibit AA, Scene Diagram.* Furthermore, and recalling Defendant Hughes', Johnston's, and Limon's testimony regarding the speed at which Plaintiff was turning, the physical evidence shows that rather than taking appropriate tactical pauses between each shot in order to assess the need for further shots, Defendant Hughes fired five consecutive shots for no other reason other than he believed that Plaintiff was turning around in order to retreat back to the house. *See Exhibit 3, Plaintiff's Exhibits 1, 6.* As Defendants own expert testified, a tactical pause is required before more force is used to assess whether a subject is in fact complying with orders. The evidence clearly indicates that there was no tactical pause between each shot, as the pictures indicate the first and second shot are located in the midline. Without a tactical pause, the officers could not have assessed compliance, and therefore, clearly used excessive force. This is particularly disturbing in light of the fact that there is no evidence that Defendants ever ordered Plaintiff to stop turning around or do anything other than turn around. Upon this evidence, Plaintiff renews his motion for a judgment as a matter of law as to Defendants Johnston and Hughes and, alternatively, moves for a new trial as to these defendants.

**B.     The Use Of The Wooden Baton Rounds Was Excessive**

The evidence in the form of testimony and exhibits shows that, at the time that Defendant Johnston had launched his wooden baton rounds, Plaintiff had turned around so that his back was facing the Entry team and that he had taken a single step or, at worst, walked a few steps having just been struck with five beanbag rounds and disoriented by the flash-bang diversionary device.

Defendant Johnston testified that Plaintiff made no attempt to run and there is no evidence to the contrary. Defendant Johnston testified that he launched four wooden batons from his 37mm launcher into Plaintiff because he believed that Plaintiff was retreating back into the house where a known weapon was located. Again, there is no evidence that Plaintiff posed an immediate threat to the officers. The evidence shows that Plaintiff's hands were clear. The evidence shows that Plaintiff was now injured from the beanbag rounds, intoxicated, further disoriented from the flash-bang diversionary device and had his back to the Entry team.. The facts and circumstances do not support that Plaintiff was an immediate threat to the officers or that Plaintiff was fleeing. Upon this evidence, Plaintiff renews his motion for a judgment as a matter of law as to Defendant Johnston and, alternatively, moves for a new trial as to this defendant.

C.     The Use Of The Dog Was Excessive

The evidence shows that, at the time that Defendant Johnston ordered the release of the dog, Plaintiff had his back towards the Entry team and walked 2 to 4 feet – and was still in the area at the end of the drive. The testimony shows that Defendant Weimerskirch released his dog to prevent Plaintiff from fleeing back to the house. Defendant Johnston and Weimerskirch testified that Defendant Weimerskirch released his dog in response to Defendants Johnston's order and without warning. The evidence shows that when the dog was released, Plaintiffs back was to Defendant Weimerskirch and his dog and that Plaintiff had just been shot 5 times with a beanbag shot gun, the wooden batons, was intoxicated and further disoriented by the flash-bang diversionary device. Defendant Weimerskirch further testified that when the dog was biting Plaintiff's arm, Defendant Weimerskirch gave his dog a command, typically reserved for training purposes, to "apport," which means retrieve. Testimony shows that Defendant Weimerskirch's dog complied with the apport command by pulling on Plaintiff's arm in an effort to pull Plaintiff to Defendant Weimerskirch on command. Upon this evidence, Plaintiff renews his motion for a

judgment as a matter of law as to Defendant Johnston and Weimerskirch and, alternatively, moves for a new trial as to these defendants.

**D.     The Use Of The First And Second TASERS Was Excessive**

The evidence shows that when Defendant Weimerskirch deployed his dog, Plaintiff clutched onto the metal fence that he was standing next to and that, at the time that Defendant Limon deployed his TASER, Plaintiff was holding onto that fence with his right hand in response to the dog biting his left arm at his elbow. *See e.g., Exhibit 2, Plaintiff's Exhibits 44, 45*. The evidence further shows that at the time the Entry team approached Plaintiff and *before* Defendants Limon and then Defendant Hughes had deployed their TASERS, Defendants Weimerskirch and Johnston had already determined that it was safe to approach Plaintiff. The testimony supports that, without an order from Defendant Johnston, Defendant Limon deployed his TASER and cycled it once and then Defendant Hughes deployed his TASER and cycled it six times. Defendant Hughes testified that he did so because Defendant Limon announced that his TASER was ineffective and because Plaintiff was not complying with verbal orders to let go of the fence. Testimony shows that at the time that Defendants Limon and Hughes deployed their TASERS, the dog was actively biting Plaintiff's arm and that the order to let go of the fence was being given at the time that the dog was actively biting Plaintiff. Moreover, the TASER log exhibit shows that Defendant Hughes cycled his TASER six times at five seconds per cycle and that he only waited 1 second between cycles one through four before cycling again. *See e.g., Exhibit 4, Plaintiff's Exhibits 47*. This evidence shows that Defendant Hughes failed to take a tactical pause between each of these cycles in order to give Plaintiff even a chance of complying with orders to let go of the fence - notwithstanding the fact that the dog was biting Plaintiff in a pulling fashion while the order was being given. As Defendants own expert testified, a tactical pause is required before more force is used to assess whether a subject is in fact complying with

orders. Plaintiff's Exhibit 47 clearly shows that there was no tactical pause between Defendant Hughes' first four TASER cycles. Without a tactical pause, Defendant Hughes could not have assessed compliance, and therefore, clearly used excessive force. Further, the Tenth Circuit has held that it is excessive to use a TASER to control a subject without having a reason to believe that a lesser amount of force or verbal command can exact compliance. *Casey,* 509 F.3d at 1286. Although Plaintiff did not respond to the verbal command, there was no reason to believe that Plaintiff could not be removed from the fence with less force than two TASER deployments and multiple TASER cycles. And, in fact, Officer Hedrick testified and demonstrated that, after everything was said and done, he was able to release Plaintiff's grasp by merely lifting Plaintiff's thumb, which resulted in Plaintiff releasing his clutched fingers from the fence. Under these facts and circumstances, the use of the first and second TASER was excessive. Upon this evidence, Plaintiff renews his motion for a judgment as a matter of law as to Defendants Johnston, Hughes, Limon and Weimerskirch and, alternatively, moves for a new trial as to these defendants.

Counsel for Defendants has been contacted regarding this motion is presumed to oppose at this juncture and given the nature of this motion.

**WHEREFORE** Plaintiff renews his motion for a judgment as a matter of law as to Defendants Johnston, respectfully Hughes, Limon and Weimerskirch collectively as to each use of specific force and all force. Plaintiff further renews his motion for judgment as a matter of law as to the City. Alternatively, Plaintiff moves for a new trial as to all defendants. Plaintiff further moves the Court for any other relief that the Court deems just and proper.

Respectfully Submitted,

**HAWK LAW, P.A.**

_____/s/_____
Sharon B. Hawk
Co-counsel for Plaintiff

                                      01 Ridge Court
                                      P.O. Box 1338
                                      Placitas, New Mexico 87043
                                      Phone: 505.867.7483
                                      Fax: 505.213.0345

I HEREBY CERTIFY that on the 23rd day of November, 2011, I filed the foregoing electronically through the CM/ECF system, which caused the parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

_____/s/_____
Sharon B. Hawk